# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **GARY MONTGOMERY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **NO. 3:19-cv-01113** |
| **v.** | ) | |
| | ) | **JUDGE CAMPBELL** |
| **DARON HALL, et al.,** | ) | **MAGISTRATE JUDGE FRENSLEY** |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM</u>

Gary Montgomery, a pretrial detainee in the custody of the Davidson County Sheriff's Office ("DCSO") in Nashville, Tennessee, filed a *pro se* complaint under 42 U.S.C. §§ 1983, 1985, and 1986 against Davidson County Sheriff Daron Hall in his official capacity, fifteen DCSO employees in their individual capacities, and several John Does.[1] (Doc. No. 1.) Plaintiff also filed an application to proceed in this court without prepaying fees and costs (Doc. No. 2) and a Motion to Appoint Counsel (Doc. No. 3). The case is before the Court for a ruling on the application and pending motion, and an initial review of the Complaint pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

### I. APPLICATION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*

The court may authorize a prisoner to file a civil suit without prepaying the filing fee. 28 U.S.C. § 1915(a). The plaintiff's application to proceed as a pauper and certified trust account statement reflect that he cannot pay the full filing fee in advance. (*See* Doc. No. 2). Accordingly,

---

[1]   Plaintiff names Sheriff "Darren Hall," however Sheriff Hall's correct first name is Daron. The Clerk's Office will be directed to make this change, as reflected in the above caption.

the application will be granted and the $350.00 filing fee will be assessed as directed in the accompanying Order. 28 U.S.C. § 1915(b)(1).

## II. INITIAL REVIEW OF THE COMPLAINT

Under the PLRA, the court must review and dismiss any prisoner complaint filed *in forma pauperis* if it is frivolous or malicious, fails to state a claim, or seeks monetary relief from an immune defendant. 28 U.S.C. § 1915A.

### A. Standard of Review

To determine whether a complaint "fails to state a claim on which relief may be granted" under the PLRA's screening requirements, the court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true unless they are entirely without credibility. *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011); *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)). An assumption of truth does not extend to legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). The court determines whether those factual allegations "plausibly suggest an entitlement to relief," *Williams*, 631 F.3d at 383 (quoting *Iqbal*, 556 U.S. at 681 (2009)), that rises "above the speculative level," *Twombly*, 550 U.S. at 555.

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams*, 631 F.3d at 383; *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). Even under this lenient standard, however, *pro se* plaintiffs must meet basic pleading requirements and are not

2

exempted from the requirements of the Federal Rules of Civil Procedure. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004); *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) (explaining the role of the courts is not "to ferret out the strongest cause of action on behalf of *pro se* litigants" or to "advis[e] litigants as to what legal theories they should pursue").

## B. Factual Background

The liberally-construed Complaint alleges the following facts that the Court must accept as true for purposes of initial review. At all relevant times, Plaintiff was a pretrial detainee held in a DCSO facility.[2] (Doc. No. 1). His criminal trial was scheduled for April 17, 2017. (*Id*. at 11). On November 21, 2016, DCSO officers searched Plaintiff's bunk and took copies of grievances that he was saving to use in court. (Doc. No. 1 at 10). Plaintiff sought return of these documents through the grievance process, but received nothing. (*Id*.) As a result, he was unable to file litigation in 2017 regarding his right to vote. (*Id*. at 15).

On March 17, 2017, at the direction of Lieutenant Hodges, Officer LeMaster[3] confiscated all of Plaintiff's other legal papers and his religious materials. (*Id*. at 10). DCSO officials placed the legal materials in an inaccessible, locked closet. (*Id*.) Plaintiff unsuccessfully filed a grievance. (*Id*.) Case Manager Supervisor Granuisse Earl subsequently denied Plaintiff possession of these legal papers. (*Id*. at 11.) She told Plaintiff that he could obtain a few pages of his legal papers, but

---

[2]   It is unclear whether Plaintiff's changed from pre-trial detainee to prisoner during the events described in the Complaint. Because this is not outcome determinative for any issues discussed herein, the Court assumes for purposes of initial review that Plaintiff remains a pre-trial detainee. In addition, the Complaint repeatedly states that Plaintiff is detained by the DCSO at the "Davidson County Jail." (*See* Doc. No. 1). However, there is no facility by that name. Accordingly, the Court assumes that Plaintiff is detained at a facility in the control of the DCSO.

[3]   The Complaint uses the name "McMaster" in this paragraph of the narrative, but elsewhere identifies this individual as "LeMaster." The Court adopts the latter name here.

3

only by "trading" other legal papers for them. (*Id*.) However, Earl knew Plaintiff had no legal papers to trade, making access on these terms impossible. (*Id*.) The Complaint alleges that Earl conspired with "all case managers and some upper management" to deny Plaintiff access to his legal materials. "All of the case managers," including Kinya Jamison, Kendra Whidbee, Ms. Miller, and Ms. Jackson, "followed [ ] Earl's lead to go along with the plan" (*id*.), as did other DCSO management staff including Harold Taylor, Lieutenant Hodges, and Tony Wilkes. (*Id*. at 18). Plaintiff filed grievances to alert DCSO management, but they "went along" with Earl's plan. (*Id*. at 11). As a result, Plaintiff was denied access to his legal materials and notes to prepare for trial with his attorney. (*Id*.) He was forced to request a continuance, resulting in more months in DCSO custody awaiting a new trial date. (*Id*.) According to Plaintiff, he was the only inmate to be treated in this manner. (*Id*.)

In October 2018, Plaintiff was allowed to retrieve a legal file from the locked closet by a DCSO officer who was not aware of the "edict and conspiracy to deny Plaintiff." (*Id*. at 12). Plaintiff kept it to trade for other pages. (*Id*.) He also traded non-contraband items for files to assist him in writing legal documents. (*Id*.) After Plaintiff filed numerous grievances, Earl offered Plaintiff extra law library time if he offered proof of involvement in *pro se* cases. (*Id*.) However, the additional time "never materialized." (*Id*.) Jamison also denied Plaintiff access. (*Id*. at 15.)

On December 28, 2018, DCSO officers again confiscated Plaintiff's legal resources and writing materials used by Plaintiff to draft pleadings. (*Id*. at 14-15). Plaintiff alleges that, in retaliation for filing numerous grievances, Jamison had filed a false report that he was storing food in those materials. (*Id*. at 14-16). Based on that report, Lieutenant Hodges and Officer Bolden searched the materials. (*Id*.) They discovered no food, but confiscated the materials anyway. (*Id*.) Bolden wrote up Plaintiff, but could not determine what charge to bring. (*Id*. at 16). As a result of

collusion between the officers and the disciplinary board, Plaintiff was eventually charged with having "contraband" (even though all the items were permitted), possessing property without authorization (even though the items came from staff, the commissary, or in the mail), and several other infractions including forgery and violation of housing rules. (*Id.*) Plaintiff was found not guilty on most of the charges. (*Id.* at 16).

Jamison was so upset by this result that she conspired with Earl to retaliate against Plaintiff by writing him up Plaintiff a second time for the same incident, this time bringing more "absurd" charges of smuggling and tampering with property. (*Id.*) Plaintiff told the investigating officer that the charges were retaliation and "pure harassment." (*Id.*) After the second charges were dismissed, Jamison acted with "disdain" towards Plaintiff and continued to deny him access to legal paperwork. (*Id.*).

Several weeks later, in January 2019, Jamison allegedly collaborated with Earl to "create[] an incident out of thin air." (*Id.*) After Plaintiff again asked for access to legal services, Jamison told Plaintiff "he was not getting anything" and asked him to leave. (*Id.*) Plaintiff left and filed a grievance. (*Id.*) Plaintiff alleges that Jamison then retaliated by writing him up for engaging in "threatening behavior" when he stood up to leave. (*Id.*) However, Plaintiff had not been threatening or disrespectful. (*Id.* at 16-17).

Plaintiff alleges that a "sham hearing" was then held during which Jamison was neither present nor allowed by Hearing Officer Tammy Levy to be called as a witness. (*Id.*) Instead, the statement of an officer who had not been present during the alleged incident was introduced as evidence. (*Id.*) Plaintiff was found guilty and sentenced to 15 days of lockdown. (*Id.*) Plaintiff's appeal was denied by Earl rather than an appeals panel. (*Id.*) Plaintiff alleges that this was part of an effort to get him moved to the Segregated Housing Unit ("SHU"). (*Id.*) According to the

Complaint, the denial of access to Plaintiff's legal paperwork "is an ongoing injury hindering his ability to write or respond to any court actions timely and efficiently." (*Id*. at 15-16).

The Complaint also alleges inadequate prisoner legal resources. Plaintiff alleges there is a "wholly inadequate" law library at his DCSO facility. (*Id*. at 12). According to Plaintiff, the law library has limited access to Supreme Court or federal case materials (i.e., nothing except immigration cases), statutes, secondary sources, and legal research guides. (*Id*.) The law library offers access only to an outdated Lexis-Nexis database with state caselaw and attorney general opinions, as well as a few isolated resources such as Black's Law Dictionary and Tennessee state court rules and litigation handbooks. (*Id*.) There is no printer, table, or chairs, and the time allotted for use by prisoners is too short to copy anything by hand. (*Id*.) For detainees in the SHU, there is no law library access at all – merely a tablet loaded with the limited state court Lexis-Nexis database. (*Id*.) Plaintiff also alleges that his requests for assistance from a law librarian, paralegal, or knowledgeable inmate have all been denied. (*Id*.) Finally, Plaintiff alleges that Joy Vague, who is in charge of fulfilling legal research requests, "in concert with others" refuses to provide access to requested legal materials and limits requests to a small selection of materials. (*Id*. at 13). For example, Vague denies access to "landmark Supreme Court cases" and other federal court cases. (*Id*.)

Next, the Complaint alleges that DCSO employees interfered with Plaintiff's ability to file legal papers in court.[4] Plaintiff alleges that Mail Supervisor William Swafford intentionally failed to send his stamped envelope to a Wilson County court due to "postage due," despite knowing Plaintiff had no money for more postage. (*Id*.) Plaintiff brought this to the attention of the mailman and Jamison, but they did nothing about it. (*Id*. at 13-14). As a result, Plaintiff's response to a

---

[4]     Plaintiff does not provide a date for the allegations in this paragraph.

6

motion was never filed. (*Id*. at 14-15). More broadly, Plaintiff alleges that case managers "are told" to not make copies of legal pleadings that inmates need to serve parties and make court filings. (*Id*. at 13). He also alleges that DCSO employees are "forbidden" from providing inmates with document-size envelopes for mailing pleadings to court. (*Id*.)

Finally, the Complaint alleges that Plaintiff has been denied access to counsel by DCSO employees "on numerous occasions." (*Id*.) First, Plaintiff alleges that he could not meet with counsel productively in April 2017, leading up to his trial date, because he was denied access to his legal papers. (*Id*.) Second, Plaintiff alleges that DCSO employees often made counsel Thomas Longaberger and Duck McDowell wait an unreasonable amount of time, resulting in "contention" and causing them to leave in frustration. (*Id*. at 14). Third, DCSO staff "frequently" kept counsel Michael Freeman waiting, advised him Plaintiff could not be found, or simply turned him away, including being turned away twice in April 2018 and twice in February 2019. (*Id*.) Finally, DCSO staff "frequently denied Plaintiff permission to make calls to his attorney from a non-pay phone, even though he signed up for case management services." (*Id*.) For example, in September 2019, Plaintiff spent three weeks in the hospital, and during that time staff denied all his requests to contact counsel by telephone. (*Id*.)

Liberally construing the Complaint, Plaintiff brings claims against Sheriff Daron Hall in his official capacity, several John Doe employees or contractors of the DCSO in their official and individual capacities, and the following DCSO employees in their individual capacities: Lieutenant David Hodges, Joy Vague, Case Manager Kendra Whidbee, Program Director Granuisse Earl, Case Manager Kinya Jamison, Case Manager Ms. Miller, Case Manager Ms. Jackson, Officer James LeMaster, Officer Tim Hindsley, Officer Tammy Levy, Chief of Security Barry Kidd, Mail Supervisor William Swafford, Facility Administrator Harold Taylor, Chief of Facilities Tony

Wilkes, and Officer Donquatas Bolden. (*Id*. at 9-10). He brings claims under Sections 1983 and 1985 and Tennessee state law. (*Id*. at 7, 18-20). He seeks a declaratory judgment, injunctive relief, compensatory damages, punitive damages, and attorney's fees. (*Id*. at 20-22).

**C. Analysis**

 1. <u>Section 1985 and Section 1986 Claims</u>

  Plaintiff sues Defendants under 42 U.S.C. § 1985, which confers a private federal right of action against any one or more persons who conspire to deprive a person or class of persons of equal protection of the law and who "do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is . . . deprived of having and exercising any right or privilege of a citizen of the United States." 42 U.S.C. § 1985(3).[5] To state a conspiracy claim under Section 1985(3), Plaintiff must plead facts consistent with (1) a conspiracy between two or more persons, (2) conceived for the purpose of depriving a person or class of people of the equal protection of the laws, (3) an act committed in furtherance of the conspiracy, and (4) that a person was either injured in his or her person or property, or deprived of a right guaranteed by the Constitution. *Peters v. Fair*, 427 F.3d 1035, 1038 (6th Cir. 2005) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)); *Sotherland v. Ford*, No. 1:19-cv-00080, 2019 WL 6329673, at *1 (M.D. Tenn. Nov. 26, 2019). Critically, Plaintiff must also allege that the conspiracy was motivated by racial or other constitutionally suspect class-based animus. *Bartell v. Lohiser*, 215 F.3d 550, 559-60 (6th Cir. 2000) (citing *United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 829 (1983)). Prisoners are not a protected class for the purposes of Section 1985(3). *Rose*

---

[5] Section 1985(1) and (2) pertain, respectively, to preventing a government officer from performing his official duties and to intimidating a party, witness, or juror from attending any court of the United States. Bother are clearly inapplicable in this case.

8

*v. Leaver*, 235 F. App'x 191, 193 (6th Cir. 2002) (citing *Pryor v. Brennan*, 914 F.2d 921, 923 (7th Cir. 1990)).

Plaintiff alleges that many of the Defendants conspired against him. However, Plaintiff has not identified any examples of disparate treatment on the basis of his race or other constitutionally suspect class. Allegations of class-based animus are entirely missing from the Complaint. (*See* Doc. No. 1). Indeed, Plaintiff at times alleges either that he is only detainee to have received certain treatment by DCSO employees (e.g., confiscation of legal materials), or that DCSO employees treat all prisoners in the same deficient manner (e.g., interfering with legal filings). Because Plaintiff has failed to allege that any conspiracy against him was motivated by "racial or other constitutionally suspect class-based animus," his Section 1985 claim must be dismissed for failure to state a claim upon which relief can be granted. *See Montgomery v. Wellpath Med.*, No. 3:19-cv-00675, 2020 WL 636581, at *6 (M.D. Tenn. Feb. 10, 2020) (dismissing Section 1985 conspiracy claim because same plaintiff had not alleged discriminatory treatment).

Section 1986 creates a cause of action against any person with knowledge of a conspiracy in violation of Section 1985 and power to prevent or aid in the prevention of such violation, but who neglects or refuses to do so. *See* 42 U.S.C. § 1986. Because Plaintiff has not sufficiently alleged facts suggesting the existence of a conspiracy in violation of Section 1985, he "therefore cannot state a claim under Section 1986 either." *Butler v. Haslam*, No. 3:19-cv-00416, 2019 WL 2327523, at *8 (M.D. Tenn. May 30, 2019). This claim will also be dismissed.

2. Section 1983 Claims

Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a

9

Section 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cty.*, 763 F.3d 592, 595 (6th Cir. 2014).

A.  Statute of Limitations

Concerning the remaining Defendants, the statute of limitations for claims brought under Section 1983 in Tennessee is one year. *Jordan v. Blount Cty.*, 885 F.3d 413, 415 (6th Cir. 2018) (citing Tenn. Code Ann. § 28-3-104(a)). Under federal law, the limitations period generally "begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *Harrison v. Michigan*, 722 F.3d 768, 773 (6th Cir. 2013) (quoting *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996)). While the statute of limitations is an affirmative defense and, "[a]s such, Defendants [bear] the ultimate burden of proof on that issue," *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012) (citations omitted)), "a complaint is subject to dismissal without any further proof if 'the allegations . . . show that relief is barred by the applicable statute of limitations." *Id.* (quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

Under the prison mailbox rule, the Court deems a prisoner's complaint filed when it is given to prison officials for mailing, and assumes that date to be "the date he or she signed the complaint" unless there is evidence to the contrary. *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (citations omitted). Here, Plaintiff signed the Complaint on November 30, 2019. (Doc. No. 1 at 21). Applying the one-year statute of limitations, any Section 1983 claim that accrued prior to November 30, 2018, is time-barred. Stated differently, only Section 1983 claims that accrued on or after November 30, 2018, are timely.

It is clear from the face of the Complaint that many of Plaintiffs' Section 1983 claims accrued prior – and in certain cases well prior – to November 30, 2018. This includes all claims

10

arising out of the alleged seizure of Plaintiffs' legal grievances in 2016; seizure of Plaintiff's legal materials and religious materials in 2017; denial of access to Plaintiff's legal materials held in a locked closet prior to his 2017 criminal trial date; limiting of Plaintiff's ability to send and receive legal mail, view legal files, utilize prison legal resources, and meet with counsel prior to November 30, 2018; due process violations prior to November 30, 2018; and retaliation prior to November 30, 2018. These Section 1983 claims are time-barred and must be dismissed.

However, liberally construing the Complaint as the Court must, portions of several claims are not clearly time-barred. These involve alleged denial of access to the courts, retaliation, due process, equal protection, and state law. The Court discusses each in turn.

B. <u>Access to the Courts</u>

The law is well-settled that prisoners have a First Amendment right of access to the courts. *Singer v. Price*, Case No. 3:16-cv-02621, 2017 WL 413853, at *4 (M.D. Tenn. Jan. 31, 2017) (citing *Bounds v. Smith*, 430 U.S. 817, 821-823 (1977)); *Hall v. Callahan*, 727 F.3d 450, 456 (6th Cir. 2013) (noting that access to courts is a fundamental right). This right guarantees that prisoners have "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds*, 430 U.S. at 825. To ensure the meaningful exercise of this right, prison officials are under an affirmative obligation to provide inmates with access to an adequate law library or some alternative form of legal assistance. *Singer*, 2017 WL 413853, at *4 (citations omitted); *see also Martucci v. Johnson*, 844 F.2d 291, 295 (6th Cir. 1991). Prison officials must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Bounds*, 430 U.S. at 824-25. Officials are prohibited from actively interfering with inmates' attempts to prepare legal documents, *Johnson v. Avery*, 393 U.S. 483, 484, 489-490 (1969), or file them. *See, e.g., Dorn v. Lafler*, 601

F.3d 439, 445 (6th Cir. 2010) (explaining that "prisons have an obligation to timely mail court documents when prisoners have been diligent and punctual in submitting them to prison officials"), *abrogated on other grounds by Harrington v. Richter*, 562 U.S. 86 (2011); *Ex Parte Hull*, 312 U.S. 546, 547-549 (1941). Finally, prisoners "must have a reasonable opportunity to seek and receive the assistance of attorneys." *Procunier v. Martinez*, 416 U.S. 396, 419 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989). Meaningful access to the courts varies with the circumstances, and prison officials are accorded discretion in determining how that right is to be administered. *Bounds*, 430 U.S. at 830-31.

However, in order to state a viable claim for interference with access to the courts, a plaintiff must plead both a violation of the right and "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996). Because the right of access is "ancillary to [a lost] underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court," *Sampson v. Garrett*, 917 F.3d 880, 881 (6th Cir. 2019), "[a]n inmate who claims his access to the courts was denied fails to state a claim without any showing of prejudice to his litigation." *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Thus, a plaintiff must plead both a violation and "that the defendant[ ] ha[s] scuttled his pursuit of a 'nonfrivolous, arguable' claim." *Sampson*, 917 F.3d at 881 (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)); *see also Loyde v. Wilkes*, Case No. 3:16-cv-00758, 2016 WL 3058484, at *6 (M.D. Tenn. May 31, 2016) (a prisoner must also allege "actual prejudice to pending or contemplated litigation") (quoting *Moore v. Chavez*, 36 F. App'x 169, 171 (6th Cir. 2002)). Accordingly, the "underlying cause of action and its lost remedy" is an "element that must be described in the complaint." *Christopher*, 536 U.S. at 415-16 (citing *Lewis*, 518 U.S. at 353 & n.3). Furthermore, the injury must be specific prejudice, "[such as] the late filing of a court document or the dismissal of an otherwise meritorious claim," *Loyde*, 2016 WL 3058484, at *5

12

(quoting *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996)), and the impacted claim may only be a "direct appeal[], habeas corpus application[], [or] civil rights" action. *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir 1999) (en banc); *see also Lewis*, 518 U.S. at 351 (injury must be in connection with an attack on a criminal sentence or challenge to conditions of confinement).

Plaintiff makes several access-to-courts allegations that are not clearly time-barred. First, the Complaint alleges that, on December 28, 2018, Defendants Jamison, Hodges, and Bolden improperly confiscated legal resources and writing materials used by Plaintiff to draft pleadings. Second, Plaintiff alleges that Jamison and Earl denied him "legal services" in January 2019. Third, Plaintiff alleges, presumably against Sheriff Hall in his official capacity, an "ongoing" pattern of denial of access to legal paperwork that "hinder[s] his ability to write or respond to any court actions timely and efficiently." (Doc. No. 1 at 15). Fourth, Plaintiff alleges that Defendant Swafford, with the acquiescence of Jamison, intentionally failed to mail one of Plaintiff's court filings due to insufficient postage, despite knowing that Plaintiff could not afford more postage. Fifth, Plaintiff alleges, again presumably against Sheriff Hall, that case managers are directed not to make copies of pleadings that inmates need to serve parties and file in court and not to provide inmates with document-size envelopes for mailing pleadings. Sixth, Plaintiff alleges that he was prevented from speaking with counsel several times in February and September 2019. Seventh, Plaintiff alleges that there is a "wholly inadequate" law library at the DCJ that provides him access to no Supreme Court or federal case materials except for immigration caselaw, no statutes, no secondary sources, and no legal research guides. (*Id*. at 12). Finally, Plaintiff alleges that he has been denied all requests for assistance from a law librarian, paralegal, or knowledgeable inmate, and that Defendant Vague refuses to provide Plaintiff with access to requested legal materials.

All of these claims must be dismissed because Plaintiff does not allege actual injury. Plaintiff does not allege that he was litigating any action at all in December 2018, January 2019, or February 2019. According to the Complaint, Plaintiff filed the first of his pending Section 1983 actions in August 2019.[6] (*See* Doc. No. 1). While Plaintiff mentions an action in Wilson County, he provides no detail and does not allege an adverse decision on the motion to which he was unable to respond. Finally, Plaintiff does not allege how the denial of access to counsel in 2019 prejudiced him in any pending action. Accordingly, Plaintiff has failed to plead, as required, specific prejudice in an underlying cause of action seeking to vindicate constitutional rights. *See, e.g., Cody v. Slusher*, No. 17-3764, 2018 WL 3587003, at *2 (6th Cir. Mar. 8, 2018) (affirming dismissal of *pro se* prisoner access to courts claim on ground that plaintiff did not demonstrate arguably meritorious underlying claims); *Vick v. Core Civic*, 329 F.Supp.3d 426, 457 (M.D. Tenn. 2018) (dismissing access to courts claim because plaintiff failed to plead a denial or dismissal of underlying claim) (citing *Lewis*, 518 U.S. at 348-354); *Loyde*, 2016 WL 3058484, at *5 (dismissing access to courts claim because plaintiff failed to plead "actual injury"). Plaintiff's First Amendment access to the courts claims will therefore be dismissed without prejudice for failure to state a claim.

The Complaint also invokes the Sixth Amendment right to counsel in connection with allegations that he was denied access to counsel. It is true that the First or Sixth Amendments might be implicated if a prison denies an inmate the right to consult with his counsel. However, the Sixth Amendment applies only in the criminal context. *See Barker v. State of Ohio*, 330 F.2d 594 (6th Cir. 1964). Here, the Complaint contains no allegation that the denial of access to counsel in February or September 2019 impacted Plaintiff's criminal case. Accordingly, to the extent also

---

[6]     A review of the docket of this Court confirms that Plaintiff filed two Section 1983 actions in August 2019.

brings a Sixth Amendment claim based on these allegations, it, too, will be dismissed without prejudice.

### C. First Amendment Retaliation

In order to state a First Amendment retaliation claim, Plaintiff must allege "that (1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in part by the [prisoner's] protected conduct.'" *Hill*, 630 F.3d at 472 (quoting *Thaddeus-X*, 175 F.3d at 394, 398); *Strader v. Cumberland Cty.*, No. 2:19-cv-00045, 2020 WL 291383, at *10 (M.D. Tenn. Jan. 21, 2020). In *Hill*, the Sixth Circuit reversed the district court's dismissal of a First Amendment retaliation claim on initial review, emphasizing that the essential elements of such a claim are not overly difficult to establish, "especially in light of the 'indulgent treatment' that '[c]ourts are instructed to give . . . to the 'inartfully pleaded' allegations of *pro se* prison litigants." *Id*. at 471 (quoting *Pasley v. Conerly*, 345 F. App'x 981, 986 (6th Cir. 2009)). The Court of Appeals noted that, where the facts alleged in a prisoner's complaint are sufficient to support these elements, the claim should go forward even though the inmate "fails to explicitly state that he is making a First Amendment retaliation claim or "make an effective argument for that claim in his . . . complaint." *Id*.

Here, Plaintiff alleges that, after he filed numerous grievances concerning denial of access by DCSO employees to his own legal files, legal resources, and legal services, Defendant Jamison retaliated "out of spite" by filing a false report that Plaintiff was improperly storing food in his legal and writing materials, leading to a punitive search and seizure of those materials by Defendants Hodges and Bolden. (Doc. No. 1 at 16). Plaintiff claims that Bolden then wrote up false charges. The Complaint further alleges that Jamison became angered after Plaintiff was found

15

not guilty on most of the charges, and retaliated again by conspiring with Earl to write up new false charges. These, too, were dismissed, and Jamison continued to be upset with Plaintiff. Finally, the Complaint alleges that several weeks later, in January 2019, after Plaintiff filed another grievance regarding the denial of legal services, Jamison and Earl retaliated a third time by collaborating to create an incident "out of thin air" and writing Plaintiff up for engaging in "threatening behavior." (*Id*. at 16-17). Plaintiff was found guilty on these false charges and punished with 15 days in lockdown.

On these facts, Plaintiff invokes the Equal Protection Clause of the Fourteenth Amendment. (*Id*. at 18-19). However, under governing Sixth Circuit authority, the Court finds that Plaintiff's allegations are instead sufficient to state a nonfrivolous claim of First Amendment retaliation. First, Plaintiff's efforts to seek access to the courts in the form of legal resources, and the filing of grievances concerning the denial of that access, is protected conduct under the First Amendment. *Strader*, 2020 WL 291383, at *10. Second, the adverse actions of a baseless search and seizure and subsequent multiple rounds of false disciplinary charges resulting in "lockdown" punishment would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Thaddeus-X*, 175 F.3d at 398 (adverse action "threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed"). Finally, Plaintiff has alleged that these punitive actions were motivated by his protected conduct. *See Hill*, 630 F.3d at 475-76 (retaliatory motive can be supported by circumstantial evidence including "the disparate treatment of similarly situated individuals or the temporal proximity between the prisoner's protected conduct and the official's adverse action"). Accordingly, at this early stage of the case, Plaintiff states colorable individual-capacity First Amendment retaliation claims against Jamison, Hodges, Bolden, and Earl.

16

D.  Due Process

Plaintiff next claims that he was denied due process in a prison disciplinary hearing. As an initial matter, to the extent that Plaintiff's claims are "premised on the mishandling of his grievances or violation of [DCSO] policies," he fails to state a claim under Section 1983. *Crockett v. Davidson Cty. Sheriff's Dep't*, 2019 WL 5592546, at *3 (M.D. Tenn. Oct. 30, 2019) (quoting *Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *2 (6th Cir. Mar. 31, 2017) (explaining that "a prisoner has no constitutional right to an effective prison grievance procedure") and citing *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003)). Furthermore, claims related to violations of prison policies do not state a constitutional violation. *Id.* (citing *Grinter*, 532 F.3d at 574).

Regarding Plaintiff's constitutional due process claim, the Fourteenth Amendment provides that prisoners "may not be deprived of life, liberty, or property without due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citations omitted). To state a procedural due process claim, the plaintiff must show that (1) he had a protected liberty or property interest; (2) he was deprived of that interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of that interest. *Janinski v. Tyler*, 729 F.3d 531, 541 (6th Cir. 2013) (citing *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006)). The first prong of this claim is a threshold requirement. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Thus, "the question of what process is due is relevant only if the inmate establishes a constitutionally protected interest." *Pickelhaupt v. Jackson*, 364 F. App'x 221, 224 (6th Cir. 2010) (citing *Wilkinson*, 545 U.S. at 224).

Prisoners have a narrower set of protected interests than individuals who are not incarcerated. *Wolff*, 418 U.S. at 556. As relevant here, "the Constitution itself does not give rise to

17

a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221-22 (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). A liberty interest may arise, however, in avoiding conditions of confinement that "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 223 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

Here, Plaintiff claims that he was improperly sentenced by Defendant Levy to 15 days in lockdown after a "sham hearing" based on false charges and improper evidence.[7] (Doc. No. 1 at 16-17). Plaintiff also alleges that his appeal received an improper response from Defendant Earl. For at least two reasons, this allegation does not satisfy the threshold requirement of demonstrating a constitutionally protected liberty interest.

First, Plaintiff "does not provide any details about the restrictions imposed as a result of being placed in lockdown." *Crockett*, 2019 WL 5592546, at *4. Without explaining how lockdown conditions differ from his ordinary conditions, Plaintiff cannot establish that his punishment resulted in an "atypical and significant" hardship. *Id.* (citing *Williams*, 526 F. App'x at 562-63); *Joseph v. Curtin*, 410 F. App'x 865, 869 (6th Cir. 2010) (holding that an inmate had "not demonstrated that a liberty interest was implicated" because his "complaint [did] not include any allegations about" his new security classification level "to suggest that it imposes an atypical and significant hardship"). Second, Plaintiff's fifteen-day sentence "was simply too short to rise to the level of an 'atypical and significant' hardship." *Crockett*, 2019 WL 5592546, at *4. To "implicate due process considerations," a prisoner's confinement in more restrictive conditions typically must be "prolonged or indefinite." *Bishawi v. Ne. Ohio Corr. Ctr.*, 628 F. App'x 339, 344 (6th Cir. 2014) (citing *Wilkinson*, 545 U.S. at 224); *Harden-Bey v. Rutter*, 524 F.3d 789, 792–93 (6th Cir.

---

[7]     Although Plaintiff also names Disciplinary Board Officer Tim Hindsley as a Defendant in this action, the Complaint only contains allegations regarding Officer Levy. (*See* Doc. No. 1 at 9, 17).

18

2008). Accordingly, the Sixth Circuit has held that periods of confinement significantly longer than 30 days did not establish a protected liberty interest. *See Bishawi*, 628 F. App'x at 344 (holding that 69 days in segregation was not an atypical or significant deprivation of liberty); *Powell v. Washington*, 720 F. App'x 222, 227 (6th Cir. 2017) ("Powell's six-month confinement in administrative segregation is insufficient to constitute an atypical and significant hardship and therefore does not implicate his due process rights."); *McMann v. Gundy*, 39 F. App'x 208, 210 (6th Cir. 2002) (holding that five months in administrative segregation was "not excessive or unusual").

Because Plaintiff has not satisfied his threshold burden of establishing that the challenged disciplinary hearing resulted in conditions of confinement that "imposed atypical and significant hardship on [him] in relation to the ordinary incidents of prison life," *Sandin*, 515 U.S. at 484, he fails to state a Fourteenth Amendment procedural due process claim. *See Crockett*, 2019 WL 5592546, at *4 (finding prisoner plaintiff failed to state due process claim when challenging disciplinary hearing that resulted in 30-day segregation). This claim will therefore be dismissed.

### E.  Equal Protection

Finally, Plaintiff claims that Defendants have engaged in "obvious discrimination" in violation of the Equal Protection Clause of the Fourteenth Amendment. (Doc. No. 1 at 18-19). The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This is "in essence 'a direction that all persons similarly situated should be treated alike.'" *Robinson v. Jackson*, 615 F. App'x 310, 314 (6th Cir. 2015) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Thus, the threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). A plaintiff must allege

19

that the government treated them disparately as compared to "similarly situated persons." *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011); *see also Tree of Life Christian Schs. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) (explaining that an "equal protection" plaintiff must be similarly situated to his comparators "in all relevant respects").

However, "to establish an equal protection violation, a plaintiff must establish more than differential treatment alone – a discriminatory intent or purpose is required." *Maye v. Klee*, 915 F.3d 1076, 1085 (6th Cir. 2019) (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977)); *Pleasant-Bey v. Tennessee*, No. 3:19-cv-00486, 2020 WL 707584, at *9 (M.D. Tenn. Feb. 12, 2020). Thus, Plaintiff may adequately state an equal protection claim by alleging "that (1) he was treated disparately from similarly situated prisoners, and (2) the disparate treatment is the result of intentional and purposeful discrimination." *Davis v. Heyns*, No. 17-1268, 2017 WL 8231366, at *4 (6th Cir. Oct. 16, 2017) (quoting *Robinson*, 615 F. App'x at 314-15).

Here, Plaintiff alleges that he was treated differently than other prisoners. However, he provides no information about any comparators. Even if the Court were to overlook this failure, Plaintiff "has not claimed that he is a member of a constitutionally protected class and that the defendants intentionally discriminated against him because of his membership in that protected class." *McGaughy v. Johnson*, 63 F. App'x 177, 178 (6th Cir. 2003) (citing *Herron v. Harrison*, 203 F.3d 410, 417 (6th Cir. 2000)); *see also Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997) (prisoners are not members of a protected class for equal protection purposes). Because Plaintiff has not sufficiently alleged a discriminatory intent or purpose, the equal protection claim must be dismissed for failure to state a claim.

20

3. State Law Claims

The liberally-construed Complaint also brings two supplemental state law claims. First, Plaintiff claims that Defendant Swafford's refusal to send his responsive pleading to court unless he paid additional postage was "a form of extortion." (Doc. No. 1 at 18). However, extortion is a criminal offense in Tennessee.[8] *See* Tenn. Code Ann. § 39-14-112 (defining extortion as a Class D felony). Moreover, the Tennessee courts have specifically declined the invitation to recognize a "viable claim for civil extortion." *Montpelier v. Moncier*, No. E2016-00246-COA-R3-CV, 2017 WL 2378301, at *8 (Tenn. Ct. App. June 1, 2017); *see also In re Prebul*, No. 1:11-CV-214, 2012 WL 5997927, at *6 (E.D. Tenn. Nov. 30, 2012) ("[T]here is no tort of extortion recognized in Tennessee."). To the extent that Plaintiff asks the Court to initiate criminal charges against Swafford – or any other individual – on his behalf, the "[a]uthority to initiate a criminal complaint rests exclusively with state and federal prosecutors." *Wortman v. Tennessee*, No. 3:20-cv-00156, 2020 WL 1666601, at *6 (M.D. Tenn. Apr. 3, 2020) (quoting *Tunne v. U.S. Postal Service*, No. 5:08CV-189-R, 2010 WL 290512, at *1 (W.D. Ky. Jan. 21, 2010)). Private citizens such as Plaintiff have "no authority to initiate a federal criminal prosecution of [a] defendant for [ ] alleged unlawful acts." *Williams v. Luttrell*, 99 F. App'x 705, 707 (6th Cir. 2004). Because this Court lacks jurisdiction to initiate any investigations of alleged criminal activity upon Plaintiff's request, this claim will be dismissed.

Second, Plaintiff claims that, in addition to comprising retaliation, Defendant Jamison's false accusations and write-ups constituted harassment. (Doc. No. 1 at 19). The Tennessee Human Rights Act ("THRA") provides a cause of action for "malicious harassment." Tenn. Code Ann. §

---

[8]       To be clear, Plaintiff would far no better under federal law, where extortion is also a criminal offense in limited circumstances. *See, e.g., United States v. Collins*, 78 F.3d 1021, 1033 (6th Cir. 1996) (explaining the criminal offense of extortion under color of official right under the Hobbs Act) (citations omitted).

21

4-21-701(a). Although neither "malicious" nor "harassment" is defined in the THRA, the Tennessee Supreme Court has concluded that a claim of malicious harassment requires a plaintiff to allege: (1) that the defendant acted maliciously from "ill-will, hatred or spite," and (2) that the defendant "unlawfully intimidated another from the free exercise or enjoyment of a constitutional right by injuring or threatening to injury or coercing another person or by damaging, destroying or defacing any real or personal property of another person." *Washington v. Robertson Cty.*, 29 S.W.3d 466, 473 (Tenn. 2000); *Jackson v. City of Cleveland*, No. E2015-01279-COA-R3-CV, 2016 WL 4443535, at *8 (Tenn. Ct. App. Aug. 22, 2016). In addition, a plaintiff must also allege that the defendant was motivated by the plaintiff's race, color, religion, ancestry, or national origin. *Jackson*, 2016 WL 4443535, at *8 (citing *Bowman v. City of Memphis*, 329 S.W.3d 766, 768-69 (Tenn. Ct. App. 2004). Here, Plaintiff has made no such allegation concerning Defendant Jamison's motivation. Accordingly, this claim must be dismissed for failure to state a claim.

### III.  MOTION TO APPOINT COUNSEL

Plaintiff has filed a Motion to Appoint Counsel. (Doc. No. 3). He seeks counsel to enable him to better prosecute this action. (*Id.* at 1). Plaintiff cites the complexity of this matter and a lack of access to legal resources. (*Id.*)

An indigent plaintiff in a civil action, unlike a criminal defendant, has no constitutional right to the appointment of counsel. *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003); *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993). Rather, the appointment of counsel is a "privilege justified only by exceptional circumstances." *Lavado*, 992 F.2d at 606 (citations omitted). Whether to appoint counsel for an indigent plaintiff in a civil action is a matter within the discretion of the district court. *Id.* at 604. In making the determination of whether the circumstances warrant the appointment of counsel, courts are to consider the type of case presented and the abilities of the

plaintiff to represent himself. *Id*. at 606 (citations omitted). Evaluation of these factors in turn "generally involves a determination of the complexity of the factual and legal issues involved." *Id*. (internal quotation marks and citation omitted).

In this case, Plaintiff has stated one colorable claim of First Amendment retaliation against four Defendants. Plaintiff has clearly articulated this claim in the Complaint. Neither the factual nor legal issues involved appear, at this time, to be so complex as to constitute "exceptional circumstances." Accordingly, the Court finds that the interests of justice do not require appointment of counsel at this time. Plaintiff's Motion to Appoint Counsel will therefore be denied without prejudice. Plaintiff may raise this issue again in the future if warranted by the circumstances.

## IV. CONCLUSION

For the reasons explained above, Plaintiff's *in forma pauperis* application will be granted. Plaintiff's timely Section 1983 First Amendment retaliation claims will proceed against Defendants Jamison, Hodges, Bolden, and Earl in their individual capacities. However, the remaining Section 1983, Section 1985, Section 1986, and state law claims will be dismissed based either on the statute of limitations or for failure to state a claim. Specifically, Plaintiff's timely Section 1983 claims based on the First Amendment right of access to the courts and Sixth Amendment right to counsel will be dismissed without prejudice, and all other claims will be dismissed with prejudice.

The Motion to Appoint Counsel will be denied. This case will be referred to the Magistrate

Judge for further proceedings.

An appropriate Order will enter.

WILLIAM L. CAMPBELL, JR
UNITED STATES DISTRICT JUDGE

24