IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GARY MONTGOMERY, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:19-cv-01113 |
| ) | Judge Campbell / Frensley |
| DARON HALL, et al., ) | |
|     Defendants. ) | |

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

This matter is before the Court upon Defendants' Motion for Summary Judgment. Docket No. 26.[1] Along with their Motion, Defendants have contemporaneously filed a supporting Memorandum of Law, a Statement of Undisputed Material Facts, and supporting Declarations and Exhibits. Docket Nos. 26-1 – 28. The Plaintiff has filed a response in opposition. Docket No. 33. Defendants have filed a Reply. Docket No. 34. For the reasons discussed below, the undersigned finds that there are no genuine issues of material fact, and that Defendants are entitled to a judgment as a matter of law. Accordingly, the undersigned recommends that Defendants' Motion for Summary Judgment (Docket No. 26) be **GRANTED**, and that this action be **DISMISSED WITH PREJUDICE**.

### II. SUMMARY OF THE ARGUMENTS

As grounds for their Motion, Defendants argue that they are entitled to judgment as a matter of law on Plaintiff's First Amendment retaliation claim because: (1) Plaintiff's protected speech occurred *after* the alleged adverse action; (2) Defendants' conduct was not sufficiently adverse to

---

[1] Although Plaintiff initially sued 22 Defendants, 18 of those Defendants were dismissed via Court Order in July 2020. Docket No. 8. The remaining Defendants (Hodges, Earl, Jamison, and Bolden) have filed the instant Motion.

support such a claim; and (3) Defendants' conduct was not motivated by Plaintiff's protected speech. Docket Nos. 26, 27. Defendants additionally argue that they are entitled to qualified immunity because there is no clearly established law that would have put them on notice that any of their conduct was unconstitutional and they argue that, in fact, clearly established law instructs that their conduct was "well-within constitutional bounds" because it served the legitimate penological purpose of maintaining safety and security in jail. *Id.*

Plaintiff has filed a handwritten document entitled, "Objection to Defendants' Motion for Summary Judgment and Statement of Undisputed Material Facts," which the Court will construe as Plaintiff's Response to the instant Motion and accompanying Statement of Undisputed Material Facts. Docket No. 33.[2] In this document, Plaintiff argues that "the majority" of Defendants' statements are either not relevant to the retaliation claim, false, or not a material fact. *Id.* Plaintiff additionally states that the "actions of Defendants' are a continuation of conspiring/colluding actions in a previous case (3:19-cv-00747) to deprive Plaintiff of constitutionally protected rights and by falsely creating disciplinary events that didn't happen." Docket No. 33, footnote added. Plaintiff continues, "Although Plaintiff acknowledges that the write-ups presented in the Motion for Summary Judgment are true copies, the alleged events underlying the write-ups are not necessarily true or real." *Id.*

Plaintiff argues that Defendants repeatedly created false grounds for searches and created "impossible situations" that resulted in his items being confiscated and him being written up on untrue, "added, and inflated charges," disciplined, and placed in segregation. *Id.* Plaintiff argues that Defendants' "pre-planned" intent was to file enough write-ups and disciplinary paperwork "to

---

[2] Although Plaintiff's filing purports to also be a Response to Defendants' Statement of Undisputed Material Facts, it is not in compliance with either the Local or Federal Rules.

2

get Plaintiff to the SHU [segregated housing unit] and then change his status to permanently segregated." *Id.* Plaintiff contends that "this transfer caused [him] to lose privileges and freedom of movement, except in belly chains, for 244 consecutive days!" *Id.*

Defendants have filed a Reply to Plaintiff's Response, arguing that Plaintiff's Response does not address their arguments and further arguing that Plaintiff failed to properly respond to their Statement of Undisputed Material Facts. Docket No. 34. Specifically, Defendants contend that, "[r]ather than address the arguments in Defendants' motion, Plaintiff instead uses his response to reiterate the allegations in his Complaint" such that "the Court should construe Plaintiff's failure to respond to the arguments in Defendants' motion as an abandonment of his claims and deem their motion as unopposed." *Id.* Defendants further note that Plaintiff's assertion that they planned "to get Plaintiff to the SHU [segregated housing unit] and then change his status to permanently segregated" causing him to lose privileges "for 244 consecutive days" are allegations raised in Plaintiff's third lawsuit (*Montgomery v. Gentry, et al.,* No. 3:20-cv-00406) but not previously raised in the instant action. *Id.* Defendants argue that Plaintiff cannot raise new allegations in response to their Motion for Summary Judgment, such that this Court should disregard these previously unraised allegations. *Id.*

With regard to Plaintiff's attempted response to Defendants' Statement of Undisputed Material Facts, Defendants argue that Plaintiff's "response" is deficient under both Local Rule 56.01 and Fed. R. Civ. P. 56(c)(1) because Plaintiff's "response" does not contain evidence in a form required by the Local and Federal Rules, does not contain the requisite citations to the record, does not establish the absence of a genuine dispute of material fact, and does not show that any of Defendants' evidence is inadmissible. *Id.* Defendants also note that Plaintiff has only "responded" to eight of Defendants' ten material facts. *Id.*

3

Case 3:19-cv-01113   Document 36   Filed 02/01/23   Page 3 of 19 PageID #: 291

Defendants further note that the Court previously warned Plaintiff that he "must show there is a material dispute of fact *with citation to the record, affidavits or other matter of evidence*" and that failure to respond to a statement of facts in the manner outlined by the Court "may result in the Court taking the facts alleged in the matter as true and granting the relief requested." *Id., quoting* Docket No. 20 (emphasis original). Defendants argue that "[t]o the extent any part of Plaintiff's response is construed to contain a statement of *disputed* facts, these facts also fail to properly abide by the Federal and Local Rules," because Plaintiff fails to provide any citations to the record to support his contention that there exists a genuine dispute regarding any of the facts. *Id.*

### III. UNDISPUTED FACTS[3]

#### A. Plaintiff's Complaint

Plaintiff, a pre-trial detainee in the custody of the Davidson County Sheriff's Office ("DCSO") filed this pro se action pursuant to 42 U.S.C. §1983, arguing that Defendants retaliated against him for filing grievances by baselessly searching his legal storage closet, confiscating several items, and filing false disciplinary charges against him, eventually resulting in "lock down" punishment. Docket No. 1. Specifically, Plaintiff avers that after he filed several grievances concerning Defendant Jamison's denying him library time and access to his legal files, she retaliated against him by falsely reporting that he was storing food in his legal files, which led to a search of Plaintiff's legal storage closet on December 28, 2018, by Defendants Bolden and Hodges, who then confiscated several items that were found during the search. *Id.* Plaintiff further avers that Defendant Bolden wrote him up on false charges based on those items, and that several

---

[3] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed.

days later, Defendants Jamison and Earl conspired to again retaliate against Plaintiff by falsely charging him a second time for the same confiscated items. *Id.*

Plaintiff additionally avers that several weeks later, he filed another grievance after Defendant Jamison denied him case management services, and that Defendant Jamison, in collaboration with Defendant Earl, then again retaliated against him by charging him with even more false charges, resulting in the Disciplinary Board finding him guilty and punishing him with fifteen days in lockdown. *Id.*

Plaintiff sues Defendants in their individual capacity, seeking declaratory and injunctive relief, as well as compensatory and punitive damages, costs, fees, and any other relief the Court deems reasonable.[4] *Id.*

B.     **Declaration of Kinya Jamison**

Defendant Kinya Jamison is employed as a Case Manager with the Davidson County Sheriff's Office ("DCSO") and has been employed in this role for approximately twelve years. Docket No. 26-1, Declaration of Kinya Jamison ("Jamison Dec."), ¶ 2. She was Plaintiff's Case Manager from September 18, 2018, until January 23, 2019. *Id.*, ¶ 3. During that time, Plaintiff's excess legal materials were stored in boxes in a locked law library closet. *Id.*, ¶ 4. Upon request and at designated times, Plaintiff was permitted to exchange legal materials in his possession with those in the law library closet. *Id.*

Only legal materials were permitted to be stored in an inmate's legal storage closet. *Id.*, ¶ 5. Non-legal materials are deemed "contraband" when stored in an inmate's legal storage closet.

---

[4] In its initial frivolity review Order, this Court concluded that Plaintiff stated only a colorable First Amendment retaliation claim against Defendants Jamison, Hodges, Bolden, and Earl in their individual capacities; the remainder of Plaintiff's initial claims and Defendants were therefore dismissed. *See* Docket No. 8.

5

Case 3:19-cv-01113   Document 36   Filed 02/01/23   Page 5 of 19 PageID #: 293

*Id.* Contraband is confiscated to maintain safety and security for all inmates and DCSO personnel. *Id.*, ¶ 6. During one instance when Plaintiff was exchanging his legal materials, Defendant Jamison observed spoons in one of his boxes of excess legal materials and notified her supervisor, Defendant Earl. *Id.*, ¶ 7.

During a December 28, 2018, search of Plaintiff's legal storage closet, several non-legal items were found and confiscated. *Id.*, ¶ 8. On January 2, 2019, and at Defendant Earl's request, Defendant Jamison inventoried the items confiscated from Plaintiff's legal storage closet and sent them to the Property Department to be stored with Plaintiff's personal property. *Id.*, ¶ 9. Unaware that Plaintiff had already been written up because of the search of his legal storage closet, and because contraband was found during the search, Defendant Jamison filed a Disciplinary Incident Report on January 2, 2019, charging Plaintiff with multiple violations. *Id.*, ¶ 10. Because Plaintiff had already been disciplined because of the non-legal items found in his legal storage closet, the Disciplinary Board dismissed the charges in Defendant Jamison's January 2, 2019, write-up, and Plaintiff did not lose any privileges. *Id.*, ¶ 11.

On January 22, 2019, during a case management services meeting in Defendant Jamison's office, Plaintiff acted disrespectfully and threateningly toward her when he did not like her responses to his requests. *Id.,* ¶ 12. Plaintiff raised his voice, made threatening comments, and refused to leave Defendant Jamison's office. *Id.* Plaintiff had to be removed from Defendant Jamison's office by a correctional officer. *Id.*

Defendant Jamison documented the January 22, 2019, incident in a Disciplinary Incident Report and charged Plaintiff with violations of "Disrespect, Disruptive Behavior, Threatening Behavior, and Refusal of Direct Order." *Id.*, ¶ 13.

  C.  **Declaration of Granvisse Earl**

Defendant Granvisse Earl is currently employed as a Program Director with the DCSO and has been employed in this role for approximately eighteen years. Docket No. 26-4, Declaration of Granvisse Earl ("Earl Dec."), ¶ 2. As Program Director, Defendant Earl supervises all DCSO Case Managers and responds to inmate grievances appeals when the grievance concerns a Case Manager's conduct. *Id.*, ¶ 3.

Only legal materials are permitted to be stored in an inmate's legal storage closet. *Id.*, ¶ 4. Non-legal materials are deemed "contraband" when stored in an inmate's legal storage closet. *Id.*

Upon receiving information that Plaintiff was storing non-legal materials in his legal storage closet, Defendant Earl requested a property search of his legal storage closet because the DCSO has an interest in ensuring that contraband is not concealed in an inmate's legal paperwork. *Id.*, ¶ 5. On December 28, 2018, a search of Plaintiff's legal storage closet was conducted, and several non-legal materials were found and confiscated. *Id.*, ¶ 6. As a result of non-legal materials being found in Plaintiff's legal storage closet, the Disciplinary Board found him "guilty" of the violation of "Contraband Possession." *Id.*, ¶ 7. Plaintiff received a verbal warning for this violation and did not lose any privileges. *Id.* The Disciplinary Board dismissed the remaining violations. *Id.*

Due to Plaintiff's behavior during a case management services meeting with his Case Manager, Kinya Jamison, the Disciplinary Board found him "guilty" of the violations of "Disrespect, Disruptive Behavior, Threatening Behavior, and Refusal of Direct Order," and Plaintiff was punished with fifteen days in lock down. *Id.*, ¶ 8.

**D.     Declaration of Donquatus Bolden**

Defendant Bolden is currently employed as a Lieutenant with the DCSO, where he has been employed for approximately eleven years. Docket No. 26-6, Declaration of Donquatus Bolden ("Bolden Dec."), ¶ 2. On December 28, 2018, Defendant Bolden was employed as an

officer with the DCSO. *Id.*, ¶ 3. On or about that date, Defendant Bolden was directed by Defendant Earl to conduct a property search of Plaintiff's legal storage closet. *Id.,* ¶ 4.

On December 28, 2018, Defendants Hodges and Bolden conducted the property search and non-legal materials were found, including spoons, decks of cards, a tablet, combs, holiday cards, puzzle books, stamped envelopes, and paper IDs. *Id.,* ¶ 5. Several non-legal items were found in envelopes labeled "Legal Mail." *Id.* All non-legal items were confiscated. *Id.* Defendant Bolden documented this incident in a Disciplinary Incident Report. *Id.*, ¶ 6.

Only legal materials are permitted to be stored in an inmate's legal storage closet. *Id.,* ¶ 7. Non-legal materials are deemed "contraband" when stored in an inmate's legal storage closet. *Id.* Contraband is confiscated to maintain safety and security for all inmates and DCSO personnel. *Id.*, ¶ 8.

Plaintiff was charged with the violation of "Contraband, Possession" due to the presence of non-legal materials in his legal storage closet. *Id.*, ¶ 9.

At the time of the search, Defendant Bolden was unaware of any grievances filed by Plaintiff related to access to legal resources. *Id.,* ¶ 10.

### E.  **Declaration of David Hodges**

Defendant David Hodges is currently employed as a Lieutenant with the DCSO, where he has been employed for approximately fifteen years. Docket No. 26-8, Declaration of David Hodges ("Hodges Dec."), ¶ 2.

On December 28, 2018, Defendants Bolden and Hodges conducted a search of Plaintiff's legal storage closet, and several non-legal items were found and confiscated. *Id.*, ¶ 3. Only legal materials are permitted to be stored in an inmate's legal storage closet. *Id.*, ¶ 4. Contraband is confiscated to maintain safety and security for all inmates and DCSO personnel. *Id.*, ¶ 5. Plaintiff

8

was charged with the violation of "Contraband, Possession" due to the presence of non-legal materials in his legal storage closet. *Id.*, ¶ 6.

At the time of the search, Defendant Hodges was unaware of any grievances filed by Plaintiff relating to access to legal resources. *Id.*, ¶ 7.

F.  **Declaration of Tom Davis**

Tom Davis is the Records Manager for the DCSO and has been in that role with the DCSO since 2012. Docket No. 26-9, Declaration of Tom Davis ("Davis Dec."), ¶ 2. As part of his duties as Records Manager, Mr. Davis is familiar with the grievance procedures for the jails maintained by the DCSO. *Id.*, ¶ 3. DCSO Policy #1-3.540 governs inmate grievances. *Id. See also,* Docket No. 26-10, Policy #1-3.540.

Mr. Davis also has access to and serves as a custodian of the grievance records maintained by the DCSO, including grievance appeals, all of which are created and maintained in the normal course and scope of DCSO's business by persons whose duties include the creation, compilation, and/or retention of DCSO grievance records. *Id.*, ¶ 4. Mr. Davis has reviewed all of the inmate grievances for Plaintiff from the time of his incarceration through the present and has reviewed Plaintiff's inmate file in general. *Id.*, ¶ 5. Plaintiff filed three grievances in which he alleges that Defendant Jamison, his case manager, denied him access to his legal files or failed to schedule his law library time. *Id.*, ¶ 6. Those grievances were filed on January 5, 15, and 20 of 2019. *Id. See also*, Docket Nos. 26-11 – 26-13, Plaintiff's Grievances. Plaintiff did not file any prior grievances regarding Defendant Jamison's alleged denial of access to Plaintiff's legal files or failure to schedule his law library time. *Id.*

G.  **Declaration of Brian Burton**

Defendant Burton is currently employed as a Corporal with the Davidson County

9

Sheriff's Office, where he has been employed for approximately five years. Docket No. 26-16, Declaration of Brian Burton ("Burton Dec."), ¶ 2.

On January 22, 2019, Defendant Burton was assigned to the A-pod. *Id.*, ¶ 3. On that date, Defendant Jamison called Defendant Burton from her office and informed Defendant Burton that Plaintiff refused to leave her office and needed to be removed. *Id.*, ¶ 4. When Defendant Burton arrived at Defendant Jamison's office, Plaintiff was standing in front of her desk. *Id.*, ¶ 5. Defendant Burton gave Plaintiff two directives to come out of the office, after which Plaintiff complied. *Id.* As Defendant Burton was escorting Plaintiff down the hall back to the A-pod, he was being disrespectful toward Defendant Jamison by referring to her as a "bitch." *Id.*

On January 24, 2019, Defendant Burton provided to the Disciplinary Board a statement regarding his interaction with Plaintiff. *Id.*, ¶ 6. *See also*, Docket No. 26-17.

### H. Plaintiff's Grievances

Plaintiff filed grievances alleging that Defendant Jamison denied him access to his legal files or failed to schedule his law library time on January 5, 15, and 20, 2019. Docket Nos. 26-11, 26-12, 26-13, respectively. Additionally, on January 22, 2019, approximately one hour after the incident in Defendant Jamison's office, Plaintiff filed a grievance alleging she denied him case management services. Docket No. 1, ¶ 60; Docket No. 26-3.

## IV. LAW AND ANALYSIS

### A. Local Rule 56.01(c)

Regarding responses to the requisite Statement of Undisputed Facts filed contemporaneously in support of a Motion for Summary Judgment, Local Rule 56.01(c) states:

> **(c)** **Response to Statement of Facts**. Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either:
>
> (1) Agreeing that the fact is undisputed;

> (2) Agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or
>
> (3) Demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record.
>
> The response must be made on the document provided by the movant or on another document in which the non- movant has reproduced the facts and citations verbatim as set forth by the movant. In either case, the non-movant must make a response to each fact set forth by the movant immediately below each fact set forth by the movant. Such response must be filed with the papers in opposition to the motion for summary judgment. In addition, the non-movant's response may contain a concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried. Each such disputed fact must be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute. A copy of the statement of additional disputed facts must also be provided to opposing counsel in an editable electronic format. Pro se parties are excused only from providing a copy of the statement of additional disputed material facts to opposing counsel in an editable electronic format, and such pro se parties must otherwise comply with the requirements of this section.

Local Rule 56.01(c).

As discussed above, while Plaintiff has filed his "Objection to Defendants' Motion for Summary Judgment and Statement of Undisputed Material Facts." Docket No. 33. Despite this Court's warning that Plaintiff's response "must show there is a material dispute of fact with citation to the record, affidavits or other matter of evidence" and that failure to respond to a statement of facts in the manner outlined by the Court "may result in the Court taking the facts alleged in the matter as true and granting the relief requested" (*see* Docket No. 20), Plaintiff's "responses" do not contain the required citations to the record, nor do they show either that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. *See* Local Rule 56.01(c). *See also*, Fed. R. Civ. P. 56(c)(1), *infra*. Additionally, Plaintiff's "response" addresses only eight out of the ten facts set forth in Defendants' Statement of Undisputed Material Facts; Plaintiff has thus failed to respond

11

whatsoever to two undisputed facts. Plaintiff has therefore failed to properly respond to Defendants' Statement of Undisputed Material Facts, and, pursuant to Local Rule 56.01(g), Plaintiff's failure to properly respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendants are entitled to a judgment as a matter of law.

### B. Motion for Summary Judgment

It would be inappropriate to grant Defendants' Motion solely on the ground that Plaintiff has failed to properly respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendants have met their burden under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element

of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F. 2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56(c)(1) sets forth the requirement to support factual assertions as follows:

**(c)** **Procedures.**

**(1)** ***Supporting Factual Positions.*** A party asserting that a fact cannot be or is genuinely disputed must support that assertion by:

> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

**C.** **42 U.S.C. § 1983**

Plaintiff brings a First Amendment retaliation claim filed pursuant to 42 U.S.C. §1983. Docket No. 1.

**1. Generally**

Section 1983 provides, in part, that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right

13

secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988), *citing Parratt v. Taylor,* 451 U.S. 527, 535 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255, *quoting United States v. Classic,* 313 U.S. 299, 326 (1941).

2. **First Amendment Retaliation**

In order to state a First Amendment retaliation claim under § 1983, a plaintiff must allege that: (1) he engaged in protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between the protected speech or conduct and the adverse action (i.e., the adverse action was motivated, at least in part, by the plaintiff's protected speech or conduct). *Dye v. Office of the Racing Comm'n,* 702 F. 3d 286, 294 (6th Cir. 2012). Plaintiff must demonstrate "more than his personal belief that he is the victim of retaliation." *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002).

D. **Qualified Immunity**

Qualified immunity is "an *immunity from suit* rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). Qualified immunity generally shields government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.

14

Ct. 2727, 2738 (1983). The right at issue "must have been articulated with a significant degree of particularity," so that it is sufficiently clear to a reasonable official that his or her conduct would violate the right at issue. *Eugene D. v. Karman*, 889 F. 2d 701, 706 (6th Cir. 1989). Qualified immunity is available as long as the official's actions "could reasonably have been thought consistent with the rights [he or she is] alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034, 3038 (1987).

The initial inquiry and threshold question, according to the Supreme Court, is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S. Ct. 1789, 1973 (1991). If no constitutional right was violated, there is no necessity for further inquiry. *Id.*

A critical question is whether "any official in the defendants' position would understand that what he did violated those rights." *O'Brien v. City of Grand Rapids*, 23 F. 3d 990, 999 (6th Cir. 1994). Qualified immunity, therefore, "does not turn on the subjective good faith of the official; rather, it turns on the 'objective legal reasonableness' of his actions, assessed in light of the legal rules that were 'clearly established' at the time the actions were taken." *Id., quoting Harlow*, 457 U.S. at 818-19. "If officers of reasonable competence could disagree on whether the conduct violated the plaintiff's rights," qualified immunity will apply. *Id.*, *quoting Grossman v. Allen*, 950 F. 2d 338, 341 (6th Cir. 1991)(citations omitted).

Additionally, in cases involving multiple defendants sued in their individual capacities, the liability of each defendant must be assessed individually based on his or her own action. *Dorsey v. Barber*, 517 F. 3d 389, 399, n. 4 (6th Cir. 2008), *citing Ghandi v. Police Dep't of the City of Detroit*, 747 F. 2d 338, 352 (6th Cir. 1984).[5]

---

[5] "Persons sued in their individual capacities under §1983 can be held liable based only on their

### E. The Case at Bar

As discussed above, remaining before the Court is Plaintiff's §1983 First Amendment retaliation claim. Docket Nos. 7, 8. In order to prevail on his claim, Plaintiff must demonstrate that: (1) he engaged in protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; (3) there is a causal connection between the protected speech or conduct and the adverse action; and (4) Defendants acted under color of state law. *Supra*. Plaintiff cannot do so.

The incidents which Plaintiff avers were retaliatory to his protected speech activities are two-fold.[6] First, Plaintiff avers that in response to several grievances he filed regarding Defendant Jamison "regularly fail[ing] to schedule Plaintiff's law library time and den[ying him] access to his legal paperwork," Defendant Jamison falsely reported that Plaintiff was storing food with his legal papers, which led to a search of his legal storage closet by Defendants Bolden and Hodges, which led to the confiscation of several items and Defendant Bolden's filing of false charges. Docket No. 1., ¶¶ 48, 54, 56-58.

Second, Plaintiff avers that several weeks later, he filed a grievance alleging Defendant Jamison denied him case management services and that in retaliation, Defendant Jamison, in collaboration with Defendant Earl, retaliated against him again by charging him with additional false charges, for which the Disciplinary Board found him guilty and punished him with fifteen days in lock down. *Id.*, ¶¶ 59-61.

Although Plaintiff avers that the search of his legal closet and resultant charges were in

---

own unconstitutional behavior." *Heyerman v. Cty. Of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012).
[6] Plaintiff also avers that Defendant Jamison disliked walking to the law library to unlock the closet for him, such that she stopped doing so altogether. *Id.*, ¶ 55.

retaliation for filing his grievances, the undisputed facts establish that the search of Plaintiff's legal closet resulting in the discovery and confiscation of contraband occurred on December 28, 2018, and Plaintiff filed his grievances complaining thereof on January 5, 15, and 20, 2019. *See* Jamison Dec., ¶ 8; Earl Dec., ¶ 6; Bolden Dec., ¶ 5; Hodges Dec., ¶ 3; Docket Nos. 26-11, 26-12, 26-13, respectively. The undisputed facts further establish that Plaintiff did not file any prior grievances regarding Defendant Jamison's alleged denial of access to Plaintiff's legal files or failure to schedule his law library time. Davis Dec., ¶6. Thus, the first set of Plaintiff's grievances were filed *after* the search of his legal closet and *after* the charges brought stemming from the items confiscated during the search. Because Plaintiff filed his grievances *after* the conduct of which he complains, that conduct could not have been retaliatory. Accordingly, Plaintiff cannot establish his First Amendment retaliation claim regarding the events related to the searching of his legal storage closet and Defendants are entitled to a judgment as a matter of law thereon.

With regard to Plaintiff's claim that Defendant Jamison's second set of charges against him were filed in retaliation for filing his January 22, 2019 grievance complaining that Defendant Jamison denied him case management services, the undisputed facts demonstrate that, on January 22, 2019, during a case management services meeting in Defendant Jamison's office, Plaintiff raised his voice, made threatening comments, and refused to leave her office when he did not like her responses to his requests, such that Defendant Jamison called Defendant Burton from her office and informed Defendant Burton that Plaintiff refused to leave her office and needed to be removed, and when Defendant Burton arrived at Defendant Jamison's office, Plaintiff was standing in front of her desk. Jamison Dec., ¶ 12; Burton Dec., ¶¶ 4, 5. It is further undisputed that Defendant Burton gave Plaintiff two directives to come out of the office, after which Plaintiff complied, and that as Defendant Burton was escorting Plaintiff down the hall back to the A-pod, Plaintiff was being

17

Case 3:19-cv-01113   Document 36   Filed 02/01/23   Page 17 of 19 PageID #: 305

disrespectful toward Defendant Jamison by referring to her as a "bitch." *Id.* The undisputed facts additionally establish that Defendant Jamison documented the January 22, 2019, incident in a Disciplinary Incident Report and charged Plaintiff with violations of "Disrespect, Disruptive Behavior, Threatening Behavior, and Refusal of Direct Order" (Jamison Dec., ¶ 13); that on January 24, 2019, Defendant Burton provided to the Disciplinary Board a statement regarding his interaction with Plaintiff (Burton Dec., ¶ 6. *See also*, Docket No. 26-17); and that due to Plaintiff's behavior during a case management services meeting with Defendant Jamison, the Disciplinary Board found him "guilty" of the violations of "Disrespect, Disruptive Behavior, Threatening Behavior, and Refusal of Direct Order," and Plaintiff was punished with fifteen days in lock down (Earl Dec., ¶ 8). The Defendants' actions were based on the undisputed conduct of the Plaintiff and not in retaliation for any prior protected activity. Defendants are therefore entitled to a judgment as a matter of law on this claim.[7]

## IV. CONCLUSION

In light of the foregoing and for the reasons discussed above, the undersigned finds that there are no genuine issues of material fact, and that Defendants are entitled to a judgment as a matter of law. Accordingly, the undersigned recommends that Defendants' Motion for Summary Judgment (Docket No. 26) be **GRANTED**, and that this action be **DISMISSED WITH PREJUDICE.**

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days

---

[7] Because the undisputed facts establish that Defendants did not violate Plaintiff's constitutional rights, it is unnecessary to analyze qualified immunity as the initial inquiry and threshold question, according to the Supreme Court, is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" and if no constitutional right was violated, there is no necessity for further inquiry. *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S. Ct. 1789, 1973 (1991).

after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

                                                **JEFFERY S. FRENSLEY**
                                                **United States Magistrate Judge**